TOWNSHIP OF WASHINGTON *v.* COLER *et al.*

*(Circuit Court of Appeals, Eighth Circuit. July 5, 1892.)*

No. 83.

1. TOWNSHIPS—RAILROAD AID BONDS—AUTHORITY TO ISSUE—CONSTRUCTION OF STATUTE.

Laws Kan. 1876, c. 107, authorizing municipal townships to subscribe for railroad stock, requires (section 1) a petition by two fifths of the taxpayers, asking the county commissioners to submit to the township electors a proposition of subscription; such petition to designate (section 2) the amount of the stock, "the terms of payment," and other conditions of the subscription; the proposition to be accepted (section 5) by two thirds of those voting at the election held for that purpose, and the bonds to have coupons attached "as may be required by the terms of said proposition;" the county commissioners to levy a tax (section 6) "sufficient to pay the interest on such bonds as the same shall become due, and to create a sinking fund sufficient to pay such bonds at maturity;" the principal of the bonds to be made payable (section 13) "at any time that may be fixed in the proposition voted on," not exceeding 30 years. Section 14 declares, among other things, that to the said bonds shall be attached coupons for annual installments of "the principal and interest accruing from time to time by the terms of the bonds." *Held* that, in view of the prior provisions, the language quoted from the last section did not require that all bonds issued under the act should provide for annual payments on the principal, but merely that, if the proposition voted on provided for such annual payments, coupons therefor should be attached; and the township had authority, by proper proposition, vote, etc., to issue bonds, the whole principal of which should not mature until 30 years.

2. SAME—ESTOPPEL—RECITALS.

In an action by an innocent purchaser against a township on railway aid bonds, which on their face refer to the act authorizing their issuance and specifically recite the taking of each step required thereby, the township is estopped to allege invalidity of the bonds on any ground except that they were issued in violation of some constitutional or statutory requirement.

In Error to the Circuit Court of the United States for the District of Kansas. Affirmed.

Statement by SANBORN, Circuit Judge:

W. N. Coler & Co. brought suit in the United States circuit court for the district of Kansas against the township of Washington, in the county of Chautauqua, Kan., upon a large number of coupons detached from a series of bonds issued by the board of county commissioners of that county, on behalf of the township of Washington, on July 1, 1886. The plaintiffs recovered judgment for $5,803.46. The defendant sued out its writ of error to reverse this judgment, and the only question presented by the assignment of errors, and argued here, is whether the law under which these bonds were issued restricted the power of the defendant, and those authorized to issue bonds on its behalf, to the issuance of bonds that provided for the payment of an installment of the principal annually, commonly called "installment bonds." The case was tried below by the court upon an agreed statement of facts, from which it appears that the plaintiffs were innocent purchasers for value before maturity, and owners of the coupons sued upon and the bonds from which they were detached. One of the bonds and coupons reads as follows:

| Number | | Dollars, |
|---|---|---|
| ——. | UNITED STATES OF AMERICA. | 500. |
| STATE OF KANSAS. | | COUNTY OF CHAUTAUQUA. |

TOWNSHIP OF WASHINGTON.

Know all men by these presents, that the municipal township of Washington, in the county of Chautauqua, in the state of Kansas, for value received, hereby promises to pay to the bearer, thirty years after date, at the fiscal agency of the state of Kansas in New York city, the sum of five hundred dollars, with interest thereon from date until paid, at the rate of seven per centum per annum, payable semiannually at the fiscal agency aforesaid, on presentation of the proper coupons hereto attached, and at the times therein mentioned, respectively.

This is one of a series of thirty-six bonds of like tenor, date, and amount, numbered from one to thirty-six, inclusive, issued to the Leroy and Caney Valley Air-Line Railroad Company, a railroad corporation of the state of Kansas, in full payment of a subscription by said municipal township of Washington for one hundred and eighty shares, of one hundred dollars each, of the capital stock of said railroad company, said subscription of stock and issue of bonds being made under and by virtue of authority of, and in compliance with, the act of the legislature of the state of Kansas entitled "An act to enable counties, townships, and cities to aid in the construction of railroads, and to repeal section eight, chapter thirty-nine, of the Laws of 1874," approved February 25th, 1876, and the acts amendatory thereof, and other acts upon the same subject, and in pursuance of the authority of a special election regularly warned and held on the 27th day of April, A. D. 1886, and which was duly petitioned for in writing by more than the requisite number of qualified petitioners, and more than two fifths of the resident taxpayers of said municipal township of Washington, and more than the requisite number of qualified voters, and more than the requisite majority of the qualified electors of said township voting in favor of said subscription of. stock, and the issue of these bonds in payment thereof, which issue of bonds is in every respect in accordance with, and not in excess of, the limitation prescribed by law.

Executed and issued for and on behalf of said municipal township of Washington by order of the board of county commissioners of said county of

Chautauqua, at Sedan, the county seat, and signed by the chairman of said board, and attested by the county clerk, under the seal of said county, the first day of July, 1886. ————————,

Chairman of the Board of Commissioners.

Attest: ————————, County Clerk.

[Stamped on face: "$500."]

THE TOWNSHIP OF WASHINGTON, IN CHAUTAUQUA COUNTY, KANSAS, $17.50 will pay the bearer $17.50 seventeen 50-100 dollars on the first day of Jany., A. D. 1887, at the fiscal agency of the state of Kansas in the city of New York, being interest due on that date on bond No. ———— for $500, dated July first, A. D. 1886, issued to the Leroy and Caney Valley Air-Line Railroad Company. ————————,

Chairman of the Board of County Com'rs.

Attest: ————————, County Clk.

[Stamped on face: "1."]

Each of these bonds was duly registered in the office of the auditor of state of the state of Kansas, and bore the following indorsement:

*State of Kansas.* I, Timothy McCarthy, auditor of the state of Kansas, do hereby certify that this bond has been regularly and legally issued; that the signatures thereto are genuine; and that it was registered in my office according to law this 11th day of January, 1887.

Witness my hand and official seal.

[Auditor's Seal.] TIMOTHY McCARTHY, Auditor of State.

Section 1 of the act recited in the bonds, approved February 25, 1876, which is chapter 107 of the Laws of Kansas for 1876, provides that, whenever two fifths of the resident taxpayers of any municipal township petition the board of county commissioners to submit to the qualified voters of the township a proposition to subscribe to the capital stock of any railroad company constructing a railroad through such county, the county commissioners shall cause an election to be held to determine whether such subscription shall be made. Section 2 provides that the petition shall designate the railroad company, the amount of stock proposed to be taken, and the terms of payment, together with the conditions upon which it is proposed to make such subscription. Section 3 provides that the county commissioners shall, upon the presentation of such petition, convene and make an order which shall embrace the terms and conditions set forth in the petition, and fix the time for holding the election. Section 5 provides that, if two thirds of the qualified electors voting at such election shall vote for such subscription, the board of county commissioners shall order the county clerk to make the subscription in the name of the township, and shall cause such bonds, with coupons attached, as may be required by the terms of said proposition, to be issued in the name of such township. Section 6 provides that, whenever any bonds shall be issued in pursuance of the foregoing provisions, it shall be the duty of the board of county commissioners to levy and collect annually a tax on all taxable property in such township sufficient to pay the interest on such bonds, as the same shall become due, and to create a sinking fund sufficient to pay such bonds at ma-

turity. Section 7 provides that, whenever any sum of the foregoing taxes collected for interest or sinking fund shall remain in the hands of the treasurer after paying all the interest due, the board of county commissioners for such township shall cause the treasurer to buy up the bonds at their market value, not exceeding par. Section 10 provides that all the township taxes levied upon the property of and collected from any company to which aid is extended under the provisions of this law shall be applied exclusively to the payment of the coupons, and to provide a sinking fund for the payment at maturity of the principal of the bonds issued by such township. Section 13 provides that the principal of the bonds of such township shall be made payable at any time that may be fixed in the proposition voted upon, not exceeding 30 years from their date. Section 14 provides that all bonds issued under the provisions of this law shall be made payable at the fiscal agency of the state of Kansas in the city of New York, and shall be registered in the office of the auditor of the state of Kansas, and to the said bonds shall be attached coupons for annual installments of the principal and the interest accuring from time to time by the terms of said bonds, which shall be receivable as they shall become due for taxes due the county, township, or city issuing such bonds which were levied to pay the interest and installments on such bonds.

The petition of the taxpayers to the county commissioners to submit the question of the issuance of these bonds to a vote, provided that the principal of said bonds should "mature and be payable thirty years from the day upon which they are executed;" the proposition for the issuance of the bonds submitted to and carried by the vote of the people contained the same provision.

*Joseph G. Waters,* for plaintiff in error.

*Charles Blood Smith,* (*Rossington, Smith & Dallas,* of counsel,) for defendants in error.

Before CALDWELL and SANBORN, Circuit Judges, and SHIRAS, District Judge.

SANBORN, Circuit Judge, after stating the facts as above, delivered the opinion of the court.

The act recited in the bonds (chapter 107, Laws Kan. 1876, under which these bonds were issued) gave the authority to and imposed the duty on the county commissioners of determining whether the various provisions of the act and the various terms of the proposition adopted had been complied with before they issued the bonds. They did determine that there had been a full compliance with these terms and provisions. and so recited in the bonds, and it is conceded by counsel for the defendant that it is estopped by these recitals, as against the plaintiffs, to claim that the bonds are invalid on any other ground than that upon their face they appear to have been issued in violation of some constitutional or statutory restriction. *Chaffee Co.* v. *Potter,* 142 U. S. 355–364, 12 Sup. Ct. Rep. 216; *Town of Coloma* v. *Eaves,* 92 U. S. 491; *Lake Co.* v. *Graham,* 130 U. S. 674–681, 9 Sup. Ct. Rep. 654.

It is not claimed that these bonds were issued in violation of any restriction of the constitution, and the only provision of statute which is claimed to so restrict the power of the board of county commissioners to issue these bonds as to make them void is the clause contained in section 14 of the act, which reads as follows: "And to the said bonds shall be attached coupons for annual installments of the principal and interest accruing from time to time by the terms of said bonds." If this clause contained the only reference in the law to the time when these bonds should mature, there might be some force in the defendant's contention, but the entire law must be considered, and the intent of the legislature drawn, not from a single clause, but from the entire body of the act. When this is done, the claim of the defendant is seen to be utterly without foundation. Section 13 of the act expressly provides that the principal of the bonds "shall be made payable at any time that may be fixed in the proposition voted upon, not exceeding thirty years from their date." Section 2 provides that the petition for the submission of the proposition to subscribe for stock shall state "the terms of payment" therefor. Section 3 provides that these terms of payment shall be submitted to the vote of the people as a part of the proposition. Section 5 provides that, if the proposition is carried by the vote of the people, the county commissioners shall cause such bonds, with such coupons attached, as may be required "by the terms of said proposition" to be issued. Doubtless a proposition might have been submitted and carried to issue bonds which should provide for the payment of annual installments of the principal, but the terms of the proposition actually submitted and carried did not so provide, but provided for the issuance of bonds whose principal should be due in 30 years from their date, and in view of the express provision of section 13, that the principal "shall be made payable at any time that may be fixed in the proposition voted upon, not exceeding thirty years from date," it is very clear that the clause in section 14, that "to the said bonds shall be attached coupons for annual installments of the principal and the interest accruing from time to time by the terms of said bonds," cannot be held to mean more than that if the proposition submitted and the terms of the bonds issued in compliance therewith provide for the payment of the principal in annual installments, then coupons for such installments shall be attached to the bonds; and, as neither the proposition nor the terms of the bonds in this case did require the payment of any installments of the principal before the entire principal became due, no such coupons were necessary, and this clause had no application to these bonds.

Again, section 6 of this law provides that it shall be the duty of the county commissioners to levy and collect annually a tax "sufficient to pay the interest on such bonds as the same shall become due, and to create a sinking fund sufficient to pay said bonds at maturity." Section 7 provides that when there remains in the hands of the treasurer any part of the moneys collected from this tax, after paying "all the interest due," the board of county commissioners shall cause the treasurer to buy up the bonds at their market value, not exceeding par. And section 10

provides that the taxes levied upon the property of any company, aided under the provisions of this law, shall be applied to the payment of the coupons, and "to provide a sinking fund for the payment at maturity of the principal of the bonds issued by such township." If the legislature intended by this law that installment bonds only should be issued under it, no sinking fund would be either necessary or useful. A tax could be, and naturally would be, levied each year for the amount necessary to pay interest and the installment of principal coming due the succeeding year, and no surplus funds would be accumulated to buy bonds before maturity. The fact that a sinking fund was thus provided for is very persuasive that bonds could be issued under this law, the entire principal of which would fall due at one time; and when this law is compared with others passed by the same legislature, which do provide for the issuance of installment bonds, and it is found that in those laws no provision for a sinking fund is made, it becomes almost conclusive. Chapter 37 of the Laws of Kansas for 1876 provides for the issuance by the county of Wyandotte of $123,000 of funding bonds, payable in installments. It declares the exact amount that shall be payable in each year, and directs a levy annually of a sum sufficient to pay the interest and the installment coming due the succeeding year, but makes no provision for any sinking fund. Chapter 38, Laws Kan. 1876, authorizes the city of Lawrence to issue bonds payable in not more than 30 years from their date, and provides that, "if said bonds shall be made payable in annual installments, they shall have separate coupons attached for such installments as they fall due." It also provides that the mayor and council shall levy in each year a sum sufficient to pay the installments, if the bonds are made payable in installments, and that if they are not they shall levy a sum sufficient to provide a sinking fund for the redemption of the bonds at maturity. Chapter 49, Laws Kan. 1876, authorizes the counties of Douglass, Franklin, and Anderson to issue bonds in certain amounts, "each payable in equal semiannual installments," and provides that a tax shall be levied in each year sufficient to pay the interest and the installment of principal falling due in the succeeding year, and makes no provision for a sinking fund. Chapter 50, Laws Kan. 1876, provides that the city of Chetopa may issue bonds in certain amounts, "payable in equal annual installments," and that a levy of a tax shall be made in each year sufficient to pay the interest and the installment of the principal falling due in the succeeding year, but makes no provision for a sinking fund. In each of these acts authorizing the issuance of installment bonds only, the times of payment and the amounts of the installments are expressly fixed, and it is made the duty of the proper officers to levy and collect each year taxes just sufficient to pay the interest and the installment of principal falling due the ensuing year, but no sinking fund is provided for; while by chapter 38, in which authority is given to the city of Lawrence to issue either installment bonds or bonds the entire principal of which shall fall due at one time, as the people may elect, the policy of the legislature is made plain by the fact that this act provides that in case installment bonds are issued, no sinking

fund shall be provided for, but, in case bonds the entire principal of which shall fall due at one time are issued, a sinking fund shall be provided for. In chapter 1,07, the act under which the bonds in question were issued, there is no provision fixing the amount of any installments of the principal or the times when they shall fall due, there is no provision for levying taxes to pay any installment; but there is a provision for the levy of taxes to provide a sinking fund, there is a provision for buying bonds before they mature, and an express declaration that the bonds issued under this act shall be made payable at any time that may be fixed in the proposition voted upon. The conclusion is irresistible that authority was intended to be and was here conferred to issue these 30-year bonds, and the judgment must be and is affirmed, with costs.